IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION

| | | |
|---|---|---|
| DOUGLAS BENNIE JAMES, JR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV 314-100 |
| | ) | |
| CAROLYN W. COLVIN, Acting | ) | |
| Commissioner of Social Security | ) | |
| Administration, | ) | |
| | ) | |
| Defendant. | ) | |

_____

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**
_____

Douglas Bennie James, Jr., appeals the decision of the Acting Commissioner of Social Security denying his application for Supplemental Security Income ("SSI") under the Social Security Act. Upon consideration of the briefs submitted by both parties, the record evidence, and the relevant statutory and case law, the Court **REPORTS** and **RECOMMENDS** that the Commissioner's final decision be **AFFIRMED**, that this civil action be **CLOSED**, and that a final judgment be **ENTERED** in favor of the Commissioner.

**I.    BACKGROUND**

Plaintiff made his current application for SSI on October 14, 2010, alleging a disability onset date of July 1, 1987. Tr. ("R."), pp. 149, 170. Plaintiff had previously been awarded SSI benefits in 1987 because of personality disorders, but those benefits were suspended when Plaintiff went to prison in 2006. R. 12; doc. no. 15 ("Pl.'s Br."), Ex. A. Upon his release from incarceration, Plaintiff again applied for SSI, but this time based on allegations of seizures,

migraine headaches, and hydrocephalus. R. 174. At the administrative hearing, Plaintiff's counsel also alleged Plaintiff met Listing 12.05C, intellectual disability. R. 32. Plaintiff was thirty-five years old when the Administrative Law Judge ("ALJ") issued the decision currently under consideration. R. 21, 170. Plaintiff completed high school and obtained a special education diploma, but reports never having held a job. R. 36, 174, 230.

The Social Security Administration denied Plaintiff's application initially and on reconsideration. R. 67-70, 82-84. Plaintiff requested a hearing before the ALJ, R. 88-92, and the ALJ held a hearing on November 14, 2012. R. 27-64. At the hearing, the ALJ heard testimony from Plaintiff, who was represented by counsel, as well as from Ruth Horvath, a Vocational Expert. Id. On January 28, 2013, the ALJ issued an unfavorable decision. R. 7-26.

Applying the five-step sequential process required by 20 C.F.R. § 416.920, the ALJ found:

1. The claimant has not engaged in substantial gainful activity since October 14, 2010, the application date (20 C.F.R. § 416.971 *et seq.*).

2. The claimant has the following severe impairments: seizure disorder; borderline intellectual functioning; migraines; and adjustment disorder with anxiety (20 C.F.R. § 416.920(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. § 416.920(d), 416.925 and 416.926).

4. The claimant has the residual functional capacity ("RFC") to perform a full range of work at all exertional levels but with the following nonexertional limitations: cannot climb ladders, ropes or scaffolds; must avoid concentrated exposure to extreme heat; must avoid exposure to hazardous machinery, unprotected heights, and open flames; must avoid driving or operating motor vehicles, would require close supervision, defined as having his work checked by a supervisor 2-3 times per day; work is limited to simple, routine and repetitive tasks, in a work environment free of fast-paced production requirements, involving only simple, work-related decisions, with few, if any,

work place changes; is limited to work that would not require travel to unfamiliar places as part of work duties; is limited to occasional interaction with coworkers and supervisors, and only superficial indirect interaction with the general public. The claimant should avoid hazards and unprotected heights. The claimant has no past relevant work (20 C.F.R § 416.965).

5. Considering the claimant's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that the claimant can perform, including kitchen helper, bus person/dining-room attendant, and cleaner. (20 C.F.R. § 416.969 and 416.969(a)). Therefore, the claimant has not been under a disability, as defined in the Social Security Act, since October 14, 2010, the date the application was filed, through January 28, 2013, the date of the ALJ's decision (20 C.F.R. § 416.920(g)).

R. 12-21.

When the Appeals Council ("AC") denied Plaintiff's request for review, R. 1-5, the Commissioner's decision became "final" for the purpose of judicial review. 42 U.S.C. § 405(g). Plaintiff then filed this civil action requesting reversal or remand of that adverse decision. Plaintiff argues the ALJ erred (1) in stating that Listing 12.05 required a showing of intellectual disability prior to age twenty-two; and (2) in finding Plaintiff did not meet Listing 12.05C. See Pl.'s Br. The Commissioner maintains that Listing 12.05C requires a claimant to demonstrate deficits in adaptive functioning prior to age twenty-two and the ALJ's conclusion that Plaintiff did not meet Listing 12.05C is supported by substantial evidence. See doc. no. 16 ("Comm'r's Br.").

## II. STANDARD OF REVIEW

Judicial review of social security cases is narrow and limited to the following questions: (1) whether the Commissioner's findings are supported by substantial evidence, and (2) whether the Commissioner applied the correct legal standards. Lewis v. Callahan, 125 F.3d 1436, 1439 (11th Cir. 1997). When considering whether the Commissioner's decision is supported by substantial evidence, the reviewing court may not decide the facts anew, reweigh the evidence,

3

or substitute its judgment for the Commissioner's. Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005); Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991). Notwithstanding this measure of deference, the Court remains obligated to scrutinize the whole record to determine whether substantial evidence supports each essential administrative finding. Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983).

The Commissioner's factual findings should be affirmed if there is substantial evidence to support them. Barron v. Sullivan, 924 F.2d 227, 230 (11th Cir. 1991). Substantial evidence is "more than a scintilla, but less than a preponderance: '[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion.'" Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990) (quoting Bloodsworth, 703 F.2d at 1239). If the Court finds substantial evidence exists to support the Commissioner's factual findings, it must uphold the Commissioner even if the evidence preponderates in favor of the claimant. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158-59 (11th Cir. 2004). Finally, the Commissioner's findings of fact must be grounded in the entire record; a decision that focuses on one aspect of the evidence and disregards other contrary evidence is not based upon substantial evidence. McCruter v. Bowen, 791 F.2d 1544, 1548 (11th Cir. 1986).

The deference accorded the Commissioner's findings of fact does not extend to her conclusions of law, which enjoy no presumption of validity. Brown v. Sullivan, 921 F.2d 1233, 1236 (11th Cir. 1991) (holding that judicial review of the Commissioner's legal conclusions are not subject to the substantial evidence standard). If the Commissioner fails either to apply correct legal standards or to provide the reviewing court with the means to determine whether correct legal standards were in fact applied, the Court must reverse the decision. Wiggins v. Schweiker, 679 F.2d 1387, 1389 (11th Cir. 1982).

**III. DISCUSSION**

Plaintiff claims the ALJ erred in determining that he is not disabled under Listing 12.05. Pl.'s Br., pp. 9-13. In particular, Plaintiff claims the ALJ misstated the requirements of Listing 12.05C and then incorrectly determined that he did not meet the Listing. See Pl.'s Br.; doc. no. 17 ("Reply Br.").

**A. The Requirements for Satisfying Listing 12.05C at Step Three of the Sequential Evaluation Process.**

At step three of the sequential evaluation process, the Commissioner must determine whether a claimant meets or equals a disability described in the Listing of Impairments, which describes impairments severe enough to prevent a person from performing any gainful activity. Davis v. Shalala, 985 F.2d 528, 532 (11th Cir. 1993). Plaintiff bears the burden of showing that his condition meets or equals a Listing. Castle v. Colvin, 557 F. App'x 849, 852 (11th Cir. 2014); Wilkinson *ex rel.* Wilkinson v. Bowen, 847 F.2d 660, 662 (11th Cir. 1987).

In order to show that his impairment meets a Listing, Plaintiff needs to satisfy all of the specified medical criteria; "[a]n impairment that manifests only some of those criteria, no matter how severely, does not qualify." Sullivan v. Zebley, 493 U.S. 521, 530 (1990). "To 'equal' a Listing, the medical findings must be 'at least equal in severity and duration to the listed findings.'" Wilson v. Barnhart, 284 F.3d 1219, 1224 (11th Cir. 2002) (citation omitted). It is axiomatic that when a claimant's condition meets or equals a Listing, the Commissioner must find the claimant disabled without regard to the claimant's age, education, or previous work experience. 20 C.F.R. § 416.920(d).

"Intellectual disability," as defined by Listing 12.05, "refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during

the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05. To qualify as intellectually disabled, a claimant's condition must satisfy this general diagnostic definition and also satisfy one of four criteria specified in subparts A through D of the Listing. Id. §12.00A; see also Perkins v. Comm'r, Soc. Sec. Admin., 553 F. App'x 870, 872 (11th Cir. 2014); Crayton v. Callahan, 120 F.3d 1217, 1219 (11th Cir. 1997). Thus, "a claimant must demonstrate both subaverage intellectual functioning and deficits in adaptive functioning, as well as satisfying one of the additional criteria, to prove entitlement to disability benefits under Listing 12.05." Jordan v. Comm'r of Soc. Sec. Admin., 470 F. App'x 766, 768 (11th Cir. 2012). The regulations give several examples of adaptive activities, including: "cleaning, shopping, cooking, taking public transportation, paying bills, maintaining a residence, caring appropriately for your grooming and hygiene, using telephones and directories, and using a post office." 20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 12.00C(1).

Listing 12.05C states: "The required level of severity for this disorder is met when . . . [there is] a valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function." Id. § 12.05C. Thus, a claimant generally meets the Listing 12.05C criteria when he, in addition to satisfying the diagnostic definition, "presents a valid IQ score of 60 to 70 inclusive, and evidence of an additional mental or physical impairment that has more than 'minimal effect' on the claimant's ability to perform basic work activities." Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992); see also Perkins, 553 F. App'x at 873 (requiring a showing for Listing 12.05C claim that individual meets the Listing 12.05 diagnostic criteria, including deficits in adaptive function, along with onset before age twenty-two, a qualifying IQ score, and the requisite deficits

6

in work related functioning). However, "a valid I.Q. score need not be conclusive of [intellectual disability] where the I.Q. score is inconsistent with other evidence in the record on the claimant's daily activities and behavior." Lowery, 979 F.2d at 837; see also Hodges v. Barnhart, 276 F.3d 1265, 1269 (11th Cir. 2001) (low IQ scores give rise to presumption of intellectual disability, but such presumption may be rebutted with evidence of daily activities that are inconsistent with diagnosis of intellectual disability); Popp v. Heckler, 779 F.2d 1497, 1499 (11th Cir. 1986) ("[IQ] test results must be examined to assure consistency with daily activities and behavior").

    **B.    The ALJ's Finding that Plaintiff's Did Not Meet Listing 12.05C Is Supported by Substantial Evidence.**

The Court quickly dispenses with Plaintiff's first argument that the ALJ erroneously required a showing of intellectual disability prior to age twenty-two. As set forth above, the Listing clearly requires "deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05. The ALJ stated this standard in his opinion. R. 13. Moreover, although the ALJ stated there is "no evidence of mental retardation before age 22" in the file, R. 12, Plaintiff concedes in his reply brief, as he must in the face of Eleventh Circuit case law, that even if a low IQ score raises a presumption of intellectual disability, that presumption is subject to rebuttal by consideration of other evidence of daily activities. See Hodges, 276 F.3d at 1269. Furthermore, even assuming deficits in adaptive function existed prior to age twenty-two, there must be current deficits in adaptive functioning. See Frame v. Comm'r, Soc. Sec. Admin., 596 F. App'x 908, 910 (11th Cir. 2015). As discussed

7

below, the ALJ's extensive review of the record shows that even assuming the validity of a full-scale IQ score of 64, R. 588, Plaintiff has not established that he meets Listing 12.05.[1]

First, the ALJ recognized Plaintiff had been tested with a full-scale IQ of 64. R. 17. However, as the Commissioner points out, the record as reviewed by the ALJ shows Plaintiff had a history of borderline intellectual functioning rather than an intellectual disability as defined in the Listings. R. 13, 16, 275, 588. Indeed, a diagnosis of borderline intellectual functioning "is mutually exclusive of mental retardation." Jordan, 470 F. App'x at 768-69.

Second, the ALJ extensively reviewed Plaintiff's daily activities and behavior. The ALJ found only mild restrictions in activities of daily living. R. 13. Plaintiff self-reported that he goes to the library, takes care of his pets on a daily basis, shops for clothes, food, shoes and personal items, is able to pay his own bills, is able to play games and cards, work puzzle books, write poems, and occasionally go to church. R. 13, 19, 41-45, 205-16 (Ex. 10E). Plaintiff also uses the computer and reports attempting to apply for school to learn about computers. R. 19, 45-46. Plaintiff has no problems with personal hygiene, is able to perform light household chores every day, and identifies his hobbies as "computers, art, video games." R. 17, 219-20. Moreover, although Plaintiff received special education services in school, during an admission evaluation at Central State Hospital at age fifteen, Plaintiff was observed to be of "average intelligence," with an ability to participate in activities of daily living, including making money

---

[1] Plaintiff also argues he meets the Listing because he satisfies the requisite criteria for "deficits in adaptive functioning" as set forth in the Diagnostic and Statistical Manual of Mental Disorders (4th Ed.) ("DSM-IV"). See generally Reply Br. The ALJ is not required to follow the guidelines set forth in the DSM-IV when determining deficits in adaptive functioning. McGirt v. Colvin, CV 314-038, 2015 WL 5003667, at *1, 5 (S.D. Ga. Aug. 21, 2015). Because Plaintiff must satisfy all of the specified criteria in the Social Security regulations to meet Listing 12.05C, whether he satisfies the DSM-IV criteria for intellectual disability is not dispositive. See Sullivan, 493 U.S. at 530.

8

cutting grass and raking leaves, and it was noted that he read the Bible daily "and seems to comprehend its contents." R. 16, 280, 285. Evaluators did not observe "evidence of intellectual impairment." R. 282.

The ALJ also reviewed multiple psychological evaluations in the record. R. 17-19. Manuel Lucero, M.D., conducted a psychological evaluation of Plaintiff on December 9, 2010, and did not observe any overt cognitive impairment. R. 17, 511. Michael Prose, Ph.D., also conducted a psychological evaluation of Plaintiff on October 7, 2011. R. 17 (citing Ex. 14F). During this evaluation, Plaintiff tested at a full-scale IQ of 64, but Dr. Prose diagnosed only borderline functioning. R. 588. Dr. Prose noted Plaintiff did not need any additional help with daily life activities and reported Plaintiff spent most of his time with friends and helping his mother with household chores; his reported hobbies included "drawing pictures, surfing on the Internet, playing games and talking to friends by telephone." R. 17, 587. Dr. Prose found that Plaintiff was capable of understanding and carrying out simple instructions, although his productivity would be low, and that he would be able to maintain adequate focus if his work were limited to one or two-step processes. R. 18, 588.

The ALJ's RFC limiting Plaintiff simple, routine work, free of fast-paced production requirements accounted for Dr. Prose's comments. R. 14. Likewise, the state agency psychiatric consultant, Lyndis Anderson, Ph.D.,[2] determined Plaintiff could follow and recall simple

---

[2]Social Security Ruling ("SSR") 96-6p provides that findings of fact made by state agency medical and psychological consultants and other program physicians regarding the nature and severity of an individual's impairments must be treated as expert opinion evidence of a nonexamining source at the ALJ and AC levels of administrative review. SSR 96-6p, 1996 WL 374180, at *1 (July 2, 1996).

9

instructions but would not be a good candidate for working with the general public, all characteristics accounted for in the ALJ's RFC. R. 14, 18, 603, 607.

In sum, substantial evidence supports the ALJ's finding, based on an extensive review of the record, that Plaintiff did not satisfy Listing 12.05C, despite the existence of a full-scale IQ score of 64. As current deficits in adaptive functioning are an additional requirement alongside a valid IQ score in the necessary range, Plaintiff's arguments fail to rebut the ALJ's finding that he does not satisfy the requirements of Listing 12.05C. See Perkins, 553 F. App'x at 873 (affirming ALJ's conclusion that plaintiff did not meet Listing 12.05C despite IQ in required range due to plaintiff's work experience and daily living activities); Harris v. Comm'r of Soc. Sec., 330 F. App'x 813, 815 (11th Cir. 2009) (finding substantial evidence to support conclusion claimant did not meet Listing 12.05C, despite participation in special education classes, where he "was never diagnosed with mental retardation, only borderline intellectual functioning" and ability for self-care, managing money, and communicating effectively with others ruled out deficits in adaptive functioning necessary to meet Listing); Davis v. Astrue, Civ. Act. No. 2:07cv880, 2008 WL 2939523, at *3 (N.D. Ala. July 25, 2008) (noting no document in record classified claimant as intellectually disabled and relying on medical opinion that adaptive behavior may elevate claimant with IQ scores in mild range of intellectual disability to borderline intellectual functioning that does not satisfy Listing 12.05C).

## IV.   CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** that the Commissioner's final decision be **AFFIRMED**, that this civil action be **CLOSED**, and that a final judgment be **ENTERED** in favor of the Commissioner.

SO REPORTED and RECOMMENDED this 13th day of November, 2015, at Augusta, Georgia.

BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA